Follett, J.
Appeal from a judgment entered upon a decision of the special term, and heard in this court, upon a case containing part of the evidence.
July 11, 1872, Benjamin Maxon, owned and was seized in fee of the following tracts of land: Thirty-six acres of wood land situated in the town of Hounsfield, and known in this case as lot Ho. 1; fifteen and a half acres of wood land situated in the town of Adams, known, in this case, as lot Ho. 2; a farm, his homestead, containing about 175£ acres, situate in the town of Hounsfield, made up of the lots designated in this case as numbers 3, 4, 6 and 7,
July 11, 1872. said Benjamin Maxon conveyed to his daughter, Ellen L. Horton by a warrantee deed, fifty-five acres of said homestead farm, which piece is known in this case as lot No. 4. The consideration recited in this deed is $2,000. July 12, 1872, Benjamin Maxon, by a warrantee deed, conveyed all or part of the remainder of his homestead farm to Beuben Hall. The consideration recited in this deed is one dollar. On the same day said Beuben Hall conveyed by a warrantee deed all or part of the lands so conveyed to him to said Benjamin Maxon and Hannah T. Maxon, his wife. The consideration recited in this deed is one dollar; but in fact no consideration passed between the parties to the two deeds last mentioned, Hall being but the conduit to enable Maxon to vest the title to the remainder of the farm in himself and wife, as tenants by the entirety. The descriptions- in these two deeds are alike, except the length of the first line is stated in the deed from Maxon to Hall to be twenty-seven chains, but in the deed from Hall to Maxon the same line is stated to be twrenty chains long. The lengths and courses of the boundary lines of the subject of the grant are stated approximately, but alike in both deeds (except the length of the first line), and the same bounds are referred to in both deeds, and both state that the subject of the grant contains “ about one hundred and twenty-two acres of land,” be the same more or less, *76 which quantity would embrace all of Maxon’s homestead farm, excepting the fifty-five acres conveyed the day before to his daughter.
July 6, 1874, said Benjamin Maxon died intestate, leaving him surviving his widow (said Hannah T. Maxon), Rufus L. Maxon (a son by his first wife), Sophia F. Dimick (a daughter by his first wife), and Ellen L. Horton (a daughter by his wife Hannah T.), heirs, and only heirs-at-law. It is agreed that he died seized in fee of the wood lots, Nos. 1 and 2, and it seems to be conceded that he died seized of the irregular shaped piece containing about eleven acres, being the south part of said homestead farm, and designated as lot No. 6.
September 21, 1874, Ellen L. Horton died estate, seized in fee of said forty-five acres (lot, No. 4), leaving Judson Horton, her husband, no child having been born alive to them; Hannah T. Maxon, her mother, and Rufus L. Maxon (her half brother), and Sophia T. Dimick (her half sister), her heirs, and only heirs-at-law. After her death, and before this action was begun, the interest of Hannah T. Maxon, as doweress and as the life tenant of the estate of her daughter in lots, Nos. 1, 2 and 6, was duly set off to her by a contract entered into between her, said Rufus L. Maxon and Sophia T. Dimick.
January 8, 1885, this action was begun, the plaintiff asserting that Benjamin Maxon died seized of lots Nos. 1 and 2 (which all parties concede), and also of 3 77-100 acres designated_ in the case as lot No. 5, and of about eleven acres of said homestead farm, designated in the case as lot No. 6; and also that he died the equitable owner of 21 87-100 acres of said homestead farm, designated in the case as lot No. 3, which, by mistake, it is alleged, said Benjamin Maxon included in his aforesaid deed to Reuben Hall.
The plaintiff demands a judgment requiring: (1) Hall to convey lot No. 3 to plaintiff and his sister Sophia T. Dimick, subject to the dower interest of Hannah T. Maxon, their father’s widow; (2) that lots Nos. 1, 2, 3, 5 and 6 be partitioned between plaintiff and his said sister; (3) for damages against Hannah T. Maxon for waste alleged to have been committed in quarrying stone upon the homestead and in cutting timber upon lots Nos 1 and 2. The trial court found that Benjamin Maxon died seized of lots Nos. 1, 2 and 6; and Ellen Horton of lot No. 4; but held that his deed to Reuben Hall covered and conveyed lots Nos. 3, 5 and 7; and that Hall’s deed to Benjamin Maxon and his wife covered and conveyed said lots Nos. 3, 5 and 7; and that upon the death of Benjamin Maxon, said Hannah T. became seized in fee of said lots.
A partition was decreed between the plaintiff and his sis-
*77 ter of lots Nos. 1, 2, 4 and 6, subject to the life estate of Hannah T. Maxon in the whole of lot No. 4, and subject to her estate in dower in lots Nos. 1, 2 and 6, as set off by agreement, and also subject to her life estate in the one-third interest of her deceased daughter in said three lots.
From this judgment the plaintiff appeals, asserting that the court erred in holding that lots Nos, 3 and 5 were included in the deed from Maxon to Hall, and from Hall to Maxon and his wife; and also in refusing to award him relief for the waste alleged to have been committed.
The findings of fact in this case cannot be reviewed, but must be accepted as final, because: (1) The case does not show that it contains all of the evidence, or all bearing on the questions of fact sought to be reviewed; (2) the case does not show that the appellant prepared requests to find facts as authorized by section 1023 of the Code of Civil Procedure; (3) exceptions to findings of fact are not authorized by the Code, and are unavailing. Porter v. Smith, 107 N. Y., 531; 12 N. Y. State Rep., 479.
From the evidence, the court found, as a fact, that the deed from Maxon to Hall covered and conveyed lots numbers 3 and 5; and that on the same day Hall conveyed those lots to Maxon and his wife. Apart from such testimony as may have been given, bearing upon the interests of the parties to the deeds, the trial court, upon the deeds alone, would have been justified in holding that it was the intent of the parties, as well as the legal effect of the instruments, to include and convey said lots. To establish an intent to leave unconveyed a long, narrow strip of farming lands lying between the lands of other owners, would require more evidence than appears to have been given in this case. Lot No. 5, as described upon the map, and in this case, would have been of little or no value to a person not the owner of lands Adjoining. That Hall intended to convey the land which, on the same day, had been conveyed to him, is very patent from the deeds. About the only debatable question is, whether the last line in said two deeds was intended to be the measure of the shortest distance between its termini, or whether the term “thence easterly about forty-three chains,” was not intended to describe the southerly lines of the homestead farm. But Hannah T. Maxon has not appealed, and whether lot No. 6 is included in these two conveyances, is not before the court; and, besides, there may have been testimony in the court below not in the record, which made this question clear.
For the reasons stated, and for the reasons given in the opinion of the learned trial judge, in which we fully concur, it must be held that Hannah T. Maxon acquired title to all of the homestead farm except lots Nos. 4 and 6.
After the rights of the parties in the land had been settled by the special term, the question of waste was referred to a *78 referee who found that Hannah T. Maxon had cut from lot No. 4, in which she had a life estate, twenty-five cords of wood from growing timber, and that it was waste; it is also found that she cut from that part of lot No. 1, assigned to. her for dower, 132 cords of fire-wood from growing timber, and that it was waste.
The referee, also, found that she had cut from lot No. 2, 2,500 feet of hemlock lumber, 40,000 cedar shingles and 500_ hop poles, which he reported was waste. That the entire value of all of this property was $194.75; but found that the evidence as to the damage to the inheritance was so indefinite that he was unable to determine the extent of the damage to the inheritance.
This finding the court confirmed, reserving the right of the plaintiff and his sister to bring an action at law for the recovery of such damages as they had sustained. In this the court committed no error; lots numbers 1 and 2 were wood-land, entirely uncultivated and had been solely used for supplying the homestead farm with wood and timber, and unless the widow could continue to make a reasonable like use of the premises, her dower interest in those lots is valueless. 1 Scrib. Dow. (2d ed.), 206 to 214.
The judgment is affirmed, with costs, in favor of Hannah T. Maxon. respondent, and against Rufus L. Maxon, appellant.
Hardin, P. J., and Martin, J., concur.
The following is the opinion of the trial judge:
Williams, J.
It seems very apparent that the intention of Benjamin Maxon was to convey to Hall, and take reconveyance from him to himself and wife of all the lands up to that conveyed to Ellen L. Horton. There does not. seem to be any reason why he should desire to retain title to the narrow, irregular piece, 5, nor does there seem to be any reason why he should desire to leave title in Hall to the piece 3. All these pieces of land, 3, 4 and 5, were bounded on the east by the great lot line. The piece deeded to Hall was ■bounded on the west and S. W. by the Sulphur Springs and Reed Settlement highway. The piece dfeeded to Ellen L. Horton stopped some little distance short of that highway, and was bounded on the W. by lands of other parties. The southerly line of the Ellen L. Horton piece at its westerly extremity stopped at a point where an angle with the northerly line of Benjamin Maxon’s land to the highway would be formed—that is a straight line drawn from Ellen L. Horton’s S. E. corner to Benjamin Maxon’s N. W. corner in the center of the highway would leave this angle some little distance to the N. In describing the southerly boundary of the land deeded to Hall the deed describes it as a straight line from the great lot line to Benjamin Maxon’s N. ~W. corner in the highway, and this literally read would leave out of the description the piece 5. The description of the boundary, however, also, makes it run “past a stone standing in this S. W. corner of the lands of Solomon Hall.” These lands lie northerly of Benjamin Maxon’s land, and this corner is at the easterly margin of the highway, instead of the center of the highway. If the northerly boundary of the lands deeded to Hall was a straight line it could not pass by this stone so that this stone would be in the line. I think the words, “passing a stone,” must be interpretated as meaning that the stone was in the line. _ No other interpretation would give any effect whatever to the words, and it should not be sup-
*79 posed that the words were put in the description without a purpose. The purpose, if any existed, could only be to aid in locating the line being described. It was a fixed boundary and effect should be given to the words in determining where the line was intended to be located. What I have said as to the description in the deed to Hall, as to this northerly boundary is equally true as to the deed from. Hall; the language of the two deeds in this respect is precisely the same. If effect is to be given to this monument as locating the 1 ne, then the line could not be a straight one; there must have been an angle in it somewhere. A line starting as the center of the highway at the conceded corner and running past or over this monument, the stone, would lead directly to the angle at the S.W. corner of Ellen L. Horton’s land, reaching that angle. It could not continue further in a straight line, because Benjamin Maxon had already deeded to Ellen L. Horton all the land N. of the conceded southerly boundary and because it would reach the great lot line, the easterly boundary of all these pieces of land, at a point N. of the conceded Ñ. easterly corner of the lands deeded to Hall. It could only avoid both of these difficulties by running from the angle easterly to the great lot line along and upon Ellen L. Horton’s southerly line. It seems to me very apparent that Benjamin Maxon in preparing these descriptions, as he himself did, must have overlooked the real fact that there was an angle at the S.W. corner of Ellen L. Horton’s land. He was not a surveyor, and the angle is so slight as not to be very perceptible to a casual observer not a surveyor. These two elements of the description of this boundary line cannot both stand. It cannot be a straight line between the H. E. and N. W. corners which are conceded, and at the same time pass in its course the stone monument in question. One or the other elements must be disregarded, must be set aside, and I think it is apparent from the descriptions themselves, the intention of the grantor was to follow Ellen L. Horton’s S. line to the angle, and thence go in a straight line past or over the stone monument to the IT. W. corner. The same reasoning applied to the construction of the description in the deed from Hall to Benjamin Maxon and wife leads the court to disregard the apparent mistake in the length of the easterly boundary, stating it as twenty chains insteau of twenty-seven chains. If the boundary stops at the end of twenty chains, then a straight line from that point to the conceded northwest corner could not pass this stone monument, so this monument would be in the boundary. The monument should govern and the length of the easterly boundary be made twenty-seven chains, as it evidently was intended to be. These descriptions were evidently prepared carelessly and by an inexperienced person, as is shown by the fact that concededly they are incorrect in other respects, in other courses and dis’ances and monuments. In order to correctly describe the property conveyed in other respects than here considered, the distances at least have to be varied to conform the boundaries to the conceded monuments. I am aware of no legal objection to the construction of the description given by me, but on the contrary, the authority to so construe them seems to be abundant. Several deeds may be taken together in arriving at a proper construction. Church v. Bogardus, 5 Hun, 304; Brumfield v. Bontall, 24 id., 451; Britannia Co. v. Zingsen, 48 N. Y., 247.
The real intent of the parties must be carried out in the construction where it can be ascertained, and can be done consistently w:th the rules of law. 2 Watt’s Actions and Defenses, 503-504, and cases cited; Higinibotham v. Stoddard, 72 N. Y., 94.
Intent may be ascertained not only from the descriptions themselves but by reference to the extrinsic circumstances, relating to the premises described, the circumstances and situation of the parties, etc. Knapp v. Warner, 57 N. Y., 668, Bridger v. Pierson, 45 id., 601; Green v. Eldred, 66 id., 611.
These principles seem to be applicable to this case, and the intent seems, in view of these principles of law, to be beyond doubt, as indicated in this opinion It does not seem necessary that I should consider the remaining questions in this case in this opinion. I have indicated my conclusion as to the question as to the title to these pieces, 3 and 5. If the parties cannot agree as to the formal disposition of the case upon the other points involved, proposed findings may be prepared and served, and the parties may appear before me at any time and I will settle and sign same.